UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JORGE AVALOS | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO.  5:23-cv-00686 |
| | ) | |
| WOUNDED WARRIOR PROJECT | ) | |
| | ) | |
| *Defendant.* | ) | JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES PLAINTIFF JORGE AVALOS, (hereinafter, referenced as "Plaintiff" or Jorge Avalos) by and through his undersigned attorneys of record, and, in accordance with the Federal Rules of Civil Procedure, files this, his Plaintiff's Original Petition against WOUNDED WARRIOR PROJECT, for cause of action, Jorge Avalos would show unto the Court the following:

### I.

### SUMMARY/ STATEMENT OF THE CASE

1.     This action arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA") pursuant to 29 U.S.C §629, Plaintiff filed an U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") Charge of Discrimination against Defendant for discrimination suffered on the basis of, age, sex, retaliation and national origin under the Age in Employment Discrimination Act of 1976 and Title VI of the Civil Rights Act of 1964. Plaintiff was



wrongfully terminated by the defendant without a proper investigation when a co-worker made a baseless complaint.

2.      Furthermore, Wounded Warriors Project did not pay its employee overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the FLSA). Rather, Defendant paid Plaintiff the same hourly rate for all the hours they work including those hours in excess of forty (40) in a workweek. Plaintiff bring this action seeking to recover the unpaid and/or underpaid overtime wages and other damages owed to him.

## II.

## PARTIES

3.      Plaintiff, Jorge Avalos, is an individual, that is citizen of the State of Texas.

4.      Defendant, Wounded Warrior Project, is a Non-Profit Organization in Jacksonville, Florida which may be served by delivering a copy of the summons and of the complaint to its registered agent Corporate Services Company at 211 E. 7th Street, Suite 620, Austin Texas 78701-3218.

## III.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. Plain 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, Title VI of the Civil Rights Act of 1964.



6.      Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b), or concurrent jurisdiction with Bexar County District Court because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practice was committed in this state.

7.      On or about August 8, 2022, and within 180 days after Defendant's discriminatory acts Jorge Avalos timely filed an Amended Charge of Discrimination against Defendant with the appropriate administrative agencies, including the United States Equal Employment Opportunity Commission (hereinafter "EEOC") identified as charge number 451-2022-03191.

8.      On or about September 21, 2022, Jorge Avalos received Dismissal and Notice of Rights which his right to File a Civil Action (hereinafter "Notice") from the EEOC[1].

9.      By filing a Charge of Discrimination, receiving his Notice, and filing suit within ninety (90) days of receiving his Notice, Plaintiff, Jorge Avalos has complied with all conditions precedent and exhausted all applicable administrative remedies required by the Federal Law and the Texas Labor Code prior to filing suit.

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question arising under the FLSA.

### IV.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

---

[1] See Exhibit No. 1, Notice of Right to File Civil Action, annexed hereto and incorporated by reference as if fully set forth herein.



11.    Plaintiff timely filed a charge of discrimination against defendant with the United States Equal Employment Opportunity Commission (EEOC) and equivalent state agencies alleging, age. Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached and incorporated herein by reference as "Exhibit No. 1".

V.

FACTS / FACTUAL ALLEGATIONS

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED AND INCORPORATED IN THE EEOC FORMAL COMPLAINT AS IF ATTACHED HEREIN; TO INCLUDE BUT NOT LIMITED TO: CLAIMANT AND ALL PREVIOUS STATEMENTS, AFFIDAVITS AND DOCUMENTS PROVIDED IN EEOC CHARGE 451-2022-03191 BY OR THROUGH CLAIMANT OR RESPONDENT.**

**THE LEGAL THEORIES AND FACTUAL BASIS IN THIS MATTER WHICH ARE CONTAINED IN THE AFFIDAVIT OF JORGE AVALOS ATTACHED AND INCORPORATED HEREIN**

12.    Plaintiff, Jorge Avalos is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely an employee subject to the civil service laws of a governmental agency or political subdivision. Plaintiff's job title is a Soldier Ride Team Technician with Wounded



Warrior Project. Plaintiff is a veteran technician certified in Advanced Wheel Building, Advanced Mechanics, and Frame Building for the United Bicycle Institute, Inc.

13.    Plaintiff, Jorge Avalos was employed by Wounded Warrior Project in which his employment contract was terminated as the Soldier Ride Team Technician because of a false claim of sexual harassment by Krissy Lopez, a co-worker from Wounded Warrior Project. These are the following email responses between Krissy Lopez and Plaintiff, Jorge Avalos which resulted in the loss of employment;

14.    On or about April 16-20 of 2019, Plaintiff, Jorge Avalos received an email from the leadership of Wounded Warriors Project that reads,

" *Jorge, This email is meant to inform you and our leadership that your sexual harassment (physical, verbal, non-verbal) towards me over the last 2.5 years has been extremely difficult and needs to cease now. The below sequence of events over the last couple years must be known and stopped so no other female (WWP teammate or warrior) feels attacked and/or left vulnerable by your inappropriate actions.*

*Soldier Ride Washington DC: This event was our first-time meeting, you as a warrior and me as a WWP teammate. During the event, you asked me out for coffee (after work hours) though I declined.*



*Response:*

Yes, this is indeed where we first met, and we talked about my cycling experience. I told you how I was a mechanic and I used to coach new cyclists. After this meeting, you've mentioned to me time and time over how you're the one that told Jonas about me and my experience and how I would be a good candidate as the back-up mechanic to Lorinda Puter. Fact of the matter is, Jonas and I had talked that week about three times for at least an hour each time and exchanged information so that I could possibly work with the WWP (Wounded Warrior Project). This happened before you and I spoke.

I never invited you to coffee with me.

15.   On or about December 10-13, 2020 or January 14-17, 2021

Soldier Ride at T-Bar: As a teammate, you did not attend one of the Soldier Ride dinners, so you asked me to bring you back food. As a good teammate, I gave you a phone call 30 minutes out to let you know I would swing by your room to drop off the food. Surprising, you answered the door in your underwear and shirt. When you realized I was uncomfortable, you laughed and said "Oops." I immediately left your door after handing your food over. I shared this with Mike and Michelle for awareness and engagement on the matter.

*Response:*



*I don't recall which of these two times that we went to the T-Bar Ranch you're referring to me not going to dinner with the team or the warriors. However, when you brought me the meal, I answered the door wearing running shorts and a t-shirt. The running shorts I always took with me on events look like cycling shorts but without the pad. I've never answered the door to anyone wearing just underwear. After I read this email, I contacted Michelle Sanchez and asked her if she was ever told about this, and her immediate response was no. she has also said that she would make a statement about this if necessary. Also, why didn't Mike Owens approach me about this behavior at that time?*

16.    September 23-28 or January 22-26, 2020

*Soldier Ride El Paso: Sitting very near me on the bus, you asked me if I was happy in my marriage and then preceded to ask me how I knew I was happy with my husband, as if that wasn't enough, I asked all teammates for their room numbers to add to my attendance list, you texted me later and asked if that is all I needed it for. I shared this with Mike and Michelle again because it was getting unbearable with your nonverbal and verbal gestures/comments.*

*Response:*

*I don't know which of these two dates you're referring to, however when I asked you about your marriage, I asked in the same fashion I've asked many people that have been married for a*



*long time in what makes people happy in their marriage and how they've made it last so long. I've asked the same question to Mike Owens (Soldier Ride Team Manager) when I found out how long he was married, to include asking him what made it work.*

17.    May 26-29, 2021, or February 16-20, 2021

*Soldier Ride Killeen: You thought it might be a good idea or funny to grab me from behind with your hands on my hips and say, "You're all I need." I immediately told you sternly to keep your hands off me. I didn't share this with anyone as I was sick and in awe of your actions. I didn't tell my teammates, boss, or my husband.*

*Response:*

*I know for a fact I've never put my hands on you the way you described in this paragraph.*

18.    June 11, 2021

*Soldier Ride San Antonio: During the Sea World event, I asked if anyone wanted water and you stated, "all I need is a tall glass of Krissy." I shared this with Mike and Jared due to your comments and physical touching was very difficult, though I wanted to keep the peace, but wanted you to cease bothering me.*



*Response:*

    *I never said those words to you. If you did happen to tell Jared Holder (Teammate) or Mike Ownes, why didn't either of them, especially the team manager, talk to me about my actions or about your discomfort with my words?*

*Soldier Ride San Antonio: You continued and persisted to inquire about my happiness in my marriage, trying to engage in meaningful and personal conversation. Repeatedly, I've told you the same thing, I'm not interested, and I'm happily married. I kept this to myself but did share with my husband on some of your actions and words. I asked Joe to allow my leadership to handle it.*

*Response:*

    *I've never had a conversation with you where you've had to use the words "I'm not interested" and "I'm happily married." If I did in fact, ask you about your happiness in your marriage in the many conversations we've had, it's most likely because you're always talking about your husband and your family and me trying to figure out the key to having a lasting marriage.*

19.    **March 29-April 3, 2022**



*Soldier Ride Houston: You made comments about me not being outside working and then felt the need to come in later and apologize. In addition, when apologizing, you placed your hand on my leg and sat very close to me. I told you not to touch me and explained your lack of respect, lack of spacing with me,; and that we were teammates, nothing else. The next day, you came up to me and hugged me in front of others and I firmly told you (again) to not touch me. I made it very clear to not touch me when I pulled away from your hug and told you I didn't need your apologies at Space Center Houston. Though your actions could be seen by outsiders as meaningless, when you put all the events (and this is not all of them) together, it is evident, your behavior is unprofessional and damaging.*

*I shared your actions with Mike, Jared, and Juan. Mike finally sent an email to all of us about professional behavior. In addition, Odyssey's new teammate, Holly, reached out to me and asked, "What was is about Jorge always sending pics or videos of himself", so I told her to stay away from you.*

*Response:*

*The comment I made to you was, "Welcome to the outside!" because you came out and tried to give advice on securing a tent due to the high winds we were experiencing. The tent was already secured, and I thought it would be funny to make that joke. You got embarrassed because everyone laughed, to include the new teammate Audra Adai, whom you were trying hard to impress. I realized that the joke bothered you after you told me, "Shut up Jorge" and you walked away. Later, when I walked into the hotel where your table was posted, I did sit in the seat next to you (where Juan Arrendondo had been sitting) and*



*butted my shoulder up against yours and said, "I'm sorry." You told me there was nothing to be sorry about and proceeded to tell me why it bothered you so much on what I said. You told me you hated when Lorinda and Michelle would talk badly about you because you never came outside to help when everyone else on the team would be outside either unloading or loading all the bicycles on the trailer. This was also the part where you said Michelle was a bitch to you.*

*The next day I did come up to you when you got off the bus and gave you a side hug and asked, "Are we good?" Then that is when you made a huge spectacle and yelled, "Get away from me Jorge!" So, I left you alone.*

*I rode in a privately owned vehicle to Houston with Juan and rode back with him on Sunday morning. Saturday after dinner, you had asked Juan if you could ride back with him and tried to convince me to go back to San Antonio that night so all three of us could go back together. I told Juan that he could take you if he wanted and I would catch an Uber back, if necessary. Juan decided to not leave on Saturday night and instead, we left early Sunday morning.*

*The email that was sent out from Mike did state quite a bit. After that email, I reached out to Mike and asked him if there was anything that I needed to address or did wrong? His reply was that it was to just remind all of us about proper behavior with each*



*as teammates and around warriors. Not once did he say to me that I was the reason he had
to send out that email.*

*As for Holly Greenston, after reading that email, I sent her a text saying; "Hello
Holly, I hope you're doing well. Just wanted to let you know that I apologize if I've offended
you or made you feel uncomfortable in any way." She replied with, "OMeeGosh, not at all.
You have done nothing wrong. I'm just balls to the walls busy trying to stay on my game.
So sorry I've been a ghost. How are you?"*

20.    **April 26-May 1, 2022**

*Soldier Ride Louisville: Knowing my discomfort, I asked another teammate to switch seats
with me on the flight once I noticed we were sitting together. While on the flight, I drifted
asleep and found out from you that you placed your head on my shoulder to sleep as well. In
addition, during significant turbulence, I woke up suddenly and expressed my concerns of the
turbulence and decided to put your hand on my leg and then grab my hand. I pulled away
immediately. Lastly, to cover your tracks, you told a fellow teammate that I grabbed your
hand, that is a lie. This entire experience has been traumatizing.*

*Response:*



Yes, it turned out that we sat together on the flight from Dallas to Kentucky. The flight went smoothly until about 10 minutes till landing. There was some turbulence and you got really freaked out. I asked if you were okay, and you told me about a flight that you recently were on where the plane had dropped, and it scared you a lot. I saw how freaked out you were, so I grabbed your hand to calm you down. We interlaced fingers and held hands for at least five minutes. No, you didn't immediately pull away as you stated. Not once was that intended to be a romantic or sexual gesture at any time. You even squeezed my hand tightly when the turbulence got stronger. I was there as a friend being there for another friend in a time of fear. Once the event was over, we let go of our hands. As for the head on your shoulder comment, I made that comment, I made that comment in front of others as a joke on how you were fast asleep. I never did put my head on your shoulder because I didn't fall asleep at all on the plane.

I also want to mention, that before the flight took off from Dallas, I was watching a show on my phone called "Peaky Blinders". It started on Season 3 episode 5 where the main character goes to a Russian mansion. Because I have seen the show before, I knew what scene was about to come up, so I fast forward the sex scenes because that's not an episode to watch where others can see it. Krissy glanced over to my phone and saw that I was watching that show and told me how she was watching it as well. In casual conversation, after I had mentioned to the rest of the team how I had to fast forward a lot of the show. Krissy stated, "Why would you forward it?" I said, "Because it had explicit sex scenes", she then stated, "What? I like sex!" I didn't say anything after that.

After being in Kentucky for a few days, we finally had the chance to meet Audra's fiancée, Kyle. The first thing Krissy said to Kyle was, "Oh my God, you must be Kyle!" Lift up your shirt and let me see those abs!" I immediately looked at Jared and raised my eyebrows. I then turned to Kyle and saw his uncomfortable look and he replied with, "I don't really have any."

Thursday April 28, 2022: The warriors showed up in the morning and we all did what we normally do when they show up the first day. However, at 8:07pm you called me asking I could escort you because a male warrior asked if he could exchange some clothing, and you didn't wan to be in the conference room alone with him. I agreed to help you out and I saw nothing wrong with you asking me this because it's not the first time you've asked me to assist you with things. If I was such a threat to you and if you were so uncomfortable being around me. Why did you call me to escort you and not any of the other three teammates? Especially since there was now a female on the team?

After we helped the warrior exchange his clothes, we ran into three warriors that attended the Nashville ride last year that were headed to the Mexican restaurant at the base level of the hotel. You asked me to come along with you to talk with them in the restaurant. I agreed to go and we all stood and talked there for at least 15 minutes. Then you and I left, walked upstairs, went into the elevators said goodnight and for off on our respective floors.

When we were at the airport Sunday morning (April 1, 2022), I noticed you were being very distant, I didn't say anything to you until the team (Mike, Jered, You, and Me) stopped to get coffee at the shop in the airport. When your coffee came out, I picked it up



*and brought it to you while you were sitting outside the shop. I squatted down, asked you if you were okay and asked you if you and I could sit and talk sometime so that we could squash whatever tension there was between us because I didn't want that tension to make working together difficult for the rest of the events. You nodded and said OKAY. Then, we went to the terminal, and you got on the plane that left a couple of hours before mine. That's the last I heard from you until I received this email.*

*Your actions this past week during Soldier Ride in Louisville, KY left me feeling angry, disgusted, and fearful. It is obvious, there have been many moments where you could adjust yourself, but instead you defy my repeated attempts to keep you away. This pattern of behavior is unwarranted. Not only do you make sexual gestures towards me the last few years, but you also continually flirt and give an unprofessional image of Wounded Warriors Project towards females on the events. It's as if you think the events are a dating opportunity for you. Perhaps, you've somehow mistaken my fun, bubbly personality for something more but rest assured, I am and always have been happily married and love my husband of 25 years.*

*Response:*

*To address the comments on the "dating opportunities", not once have I asked a female warrior on a date nor have I been disrespectful to them in making them think that I wanted to be involved with any of them.*



*Your random texts thinking of me or trying to connect in some way (during my leave, on the weekends) makes me uncomfortable and I don't believe it is proper. Beyond that, you continuously make snide comments about me being a "Colonel's wife" or "it must be nice with all that money" so please, again, do NOT do this to me or other women in the future. It makes all of us extremely uncomfortable.*

*-Krissy*

*Response:*

*The so-called random texts that I've sent you have been of things that involve chickens or asking if you're okay on the times that you weren't with us on the events. I figured that was okay because I thought we indeed were friends. You offered to connect with me on Facebook, but then chose not to, because you asked if I was friends with Mike, Jared, and Juan and I said yes. You stated you didn't want any of them to know your personal Facebook account.*

*You also gave me eggs from your chickens on the 11th or 12th of February and included a card that reads "You're just like fried chicken. You make everything better". I sent you a thank you message for the card and the eggs, and your response was "You are so Welcome! Thanks for being a great teammate and friend!" To which I replied, "I really enjoy it and appreciate your friendship very much."*



*You have mentioned to me, on more than two occasions, that I should come by your house to see your chicken coup. You've shown me several pictures of the chicken coup and told me I need to come by and see if for myself. Thank goodness I've never taken you up on that offer.*

21.    November 3, 2021, You and I taught a bicycle handlebar wrapping class in the Wounded Warriors Project office gym. This was preplanned for at least two months. You and I were alone with Mike stopping in a couple of times. However, I just find it odd that you claim to be extremely uncomfortable with me when you've asked me to help you many times.

22.    Defendant provides a bicycle mechanic to their ride team.

23.    In each material year Defendant's gross annual revenues have exceeded $500,000.00.

24.    Defendant has the power to set and enforce, and/or has delegated to others the power to set and enforce, employment practices and policies, including hiring and firing employees, supervising and controlling employee work schedules or conditions of employment, determining rates and methods of the payment of wages, maintaining employment records, as well as other employment practices and policies that directly and indirectly affect Defendant's employees.

25.    Defendant employed Plaintiff as bicycle mechanic.

26.    Plaintiff typically spent his workweek providing mechanic services to Defendant.

27.    In performing his duties as a mechanic, Plaintiff was employed engaged in commerce and/or in the production of goods for commerce and/or who handled goods or materials that have been moved in or produced for commerce within the meaning of the FLSA.



28.     Plaintiff routinely worked in excess of forty (40) hours in a workweek for Defendant.

29.     Defendant were well aware of the fact that Plaintiff routinely worked in excess of forty (40) hours in a workweek because Defendant scheduled Plaintiff for more that forty (40) hours of work per week and Plaintiff reported his weekly hours to Defendant.

30.     At no time, however, did Defendant pay Plaintiff at one-and-one-half times his regular rates for the hours they worked in excess of forty (40) in a workweek.

31.     Rather, Defendant paid Plaintiff the same hourly rate for all the hours he worked including those in excess of forty (40) in a workweek.

VI.

### CAUSES OF ACTION

32.     Plaintiffs re-allege paragraphs 1-31 as if set out here in their entirety.

33.     **PLAINTIFF HAS ATTACHED HERETO THE AFFIDAVIT OF JORGE AVALOS[2] TO ESTABLISH FACTS THAT ARE NOT CONTAINED IN THE RECORD, WHICH ARE NOT APPARENT IN THE PLEADINGS; THE AFFIDAVIT IS ATTACHED HERETO AS EXHIBIT NO. 3, AND IS INCORPORATED BY REFERENCE THE SAME AS SET FORTH IN FULL.**

---

[2] See Exhibit No. 3, Statement of Jorge Avalos annexed hereto and incorporated by reference as if fully set forth herein.



## FACTS OF DEFENDANT'S DISCRIMINATORY ACTIONS TAKEN AGAINST PLAINTIFF UNDER TITLE VII

34.    Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. The Defendant has more than five hundred employees.

35.    Plaintiff's supervisors are empowered by defendant to take tangible employment actions against plaintiff. As senior supervisor's, the defendant's employees exercised supervisory authority over plaintiff, to include but not limited to 1) the authority to fire plaintiff, 2). the authority to reassign plaintiff to a position with significantly different responsibilities, 3) the authority to significantly alter plaintiff's benefits. Defendant's employees ultimately did those very things by denying the plaintiff advancement, reassigning him to lesser positions and creating a hostile work environment to cause the resignation or termination of plaintiff.

36.    Defendant intentionally discriminated against plaintiff because of his race, color. in violation of Title VII by Defendant, by taking away plaintiffs s duties, without any corrective or disciplinary written paperwork, and practicing acts discriminatory in nature intending to cause the plaintiff to be terminated or resign her position rather than continue to face additional harassment and discriminatory practices which leads plaintiff to claim that his rights were violated. Plaintiff's chain



of command failed to abide not only defendant's own Policy Manual and Procedure, but also district wide guidelines.

37.     Defendant used the following discriminatory employment practices, policies, and rules in violation of Title VII:  Plaintiff's chain of command failed to abide not only defendant's own Human Resources Policy and Procedure but also dismissed other rules for hiring or employment actions. Although these practices, policies, and rules appear to be neutral, they serve to discriminate against a disproportionate number of persons of plaintiff's sex and age.

38.     Defendant and defendant's employees created a hostile work environment through its discriminatory words and actions towards plaintiff because of plaintiff's race and age. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with plaintiff's work performance and thereby created an intimidating, hostile, and offensive work environment.

39.     Defendant is directly liable because it was negligent in discovering and remedying the discriminatory conduct. Defendant intentionally discriminated against plaintiff because of her race, and sex in violation of Title VII by Defendant, by taking away plaintiff's duties without any corrective or disciplinary written paperwork. Defendant was discriminatory in nature and intended to cause the plaintiff to resign or be terminated rather than continue to face additional harassment and discriminatory practices, to which plaintiff claims her civil service rights were violated.

40.     Defendant is strictly liable for defendant's employee's discriminatory conduct because defendant and defendant's employees took a tangible employment action against plaintiff that significantly changed plaintiff's employment status. This ultimately led to plaintiff being reassigned with significantly different responsibilities and plaintiff's benefits were significantly changed



ultimately desiring plaintiff to resign or be subject to termination which lead ultimately to wrongful termination.

41.    Defendant is vicariously liable for defendant's employee's discriminatory conduct. Defendant did not exercise reasonable care to prevent and promptly correct the discriminatory conduct, even though plaintiff took advantage of defendant's measures designed to prevent and correct discriminatory conduct.

### A.    AGE DISCRIMINATION

42.    By and through this complaint and attached affidavit Petitioner, Jorge Avalos pleads a *prima facie* case of age discrimination and contends: A prima facie case of age discrimination requires a plaintiff to demonstrate that he: 1) suffered an adverse employment action; 2) was qualified for the position; 3) was within the protected class when the adverse action occurred; and 4) was replaced by someone younger or outside the protected class, treated less favorably than a similarly situated younger employee, or otherwise discharged because of his age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

43.    By and through Plaintiff's Affidavit attached hereto this pleading as Exhibit No. 3 the plaintiff has asserted he was forty-eight (48) years of age, of Hispanic descent and is age making plaintiff a protected class.  See, Exhibit No. 3, paragraph number 1;

    1).    Plaintiff, Jorge Avalos suffered an adverse employment action and was terminated from his position with defendant. The reason for firing Jorge Avalos is pretextual in nature.

    2).    for Plaintiff has asserted that he was qualified for the positions he held, as a Soldier Ride Team Technician with defendant and he was performing his job duties at a level that met his



employer's legitimate expectations at the time of the adverse employment action.

3)    He was certainly within the protected class as his age was the factor and only was working towards retirement.

## B.    NATIONAL ORIGIN

45.    By and through his Complaint and attached affidavit Petitioner, Officer Fernandez pleads a *prima facie* case of gender discrimination and contends: To establish a *prima facie* case of race-based employment discrimination, the plaintiff must show (1) he or she is a member of a protected class; (2) he or she was qualified for the position; (3) an adverse employment action occurred; (4) the employer gave preferential treatment to a similarly situated employee who is not in the protected class under nearly identical circumstances.

1).    By and through Plaintiff's Affidavit attached hereto this pleading as Exhibit No. 3 the plaintiff has asserted he is of Hispanic descent and is forty-eight (48) years of age making plaintiff a protected class.  See, Exhibit No. 3, paragraph number 1;

2).    Plaintiff has asserted that he was qualified for the positions he held as a Soldier Ride Team Technician with defendant. As a technician he was certified by United Bicycle Institute, Inc. and defendant was denied promotion, training opportunities.

3).    Plaintiff has had countless adverse employment actions to include wrongful termination; and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action.



4)    Members outside of his protected class were treated more favorably even though they had less seniority were provided issued new or better equipment, more training opportunities and ultimately another member outside of the protected class received his position;

## C.    RETALIATION

46.    By and through his Petition, Jorge Avalos pleads a *prima facie* case of retaliation and contends (1) that he engaged in protected conduct and opposed unlawful conduct; (2) that he was illegally investigated and his duties altered; and (3) causal connection exists between his protected conduct and his termination.

1).    By and through Plaintiff's Affidavit was forty-eight (48) years of age making plaintiff a protected class. See, Exhibit No. 3, paragraph number 1;

2).    Plaintiff has asserted that he was qualified for the positions he held, as a Soldier Ride Team Technician and terminated

3).    Plaintiff has had countless adverse employment action to include wrongful termination; and he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action;

4)    Other members outside of his protected class were treated more favorably even though they had the same equipment failures were able to keep employment.

47.    Jorge Avalos intended work for Wounded Warrior Project until retirement and was

## C.    WRONGFUL TERMINATION



48.    Jorge Avalos (1) belong to a protected class; (2) had his job performance meet their (WWP) employer's legitimate expectations; (3) have suffered an adverse employment action; and (4) have similarly situated employees not in their protected class receive more favorable treatment from the employer.

49.    It is clear that Jorge Avalos is a forty-eight-year-old male (48) (age discrimination) and of Hispanic decent both falling under a protected class.  Jorge Avalos had worked for over for significant portion of his career and after participating in a labor and employment class action and participating in a complaint on COVID protocols and participating in a EEOC investigation as a witness he was wrongfully terminated from his position with the Wounded Warrior Project.

### D.    WRONGFUL TERMINATION BASED ON RETALIATION

50.    To have a wrongful termination case based on retaliation at first impression, an employee must (1) engage in protected activity; (2) have suffered an adverse employment action (i.e., termination); and (3) establish a causal connection between the protected activity and their termination.

51.    It is clear that Jorge Avalos is a forty-eight-year-old (48) male (age discrimination) and of Hispanic decent both falling under a protected class.  Jorge Avalos had worked for over for significant portion of his career and after participating in a labor and employment class action and participating in a complaint on COVID protocols and participated in a EEOC investigation as a witness.  He was wrongfully terminated from his position with the Wounded Warrior Project.

### E.    FAIR LABOR STANDARDS ACT (FLSA)

52.    Defendant employed Plaintiff within the meaning of the FLSA.



53.     Defendant is an are employer within the meaning of the FLSA.

54.     Plaintiff is or was an employee engaged in commerce and/or in the production of goods for commerce and/or who handled goods or materials that have been moved in or produced for commerce within the meaning of the FLSA.

55.     Defendant is an enterprise engaged in commerce within the meaning of the FLSA.

56.     By failing to pay Plaintiff overtime compensation at one-and-one-half times his regular rates, Defendant violated the FLSA's overtime provisions.

57.     Defendant owes Plaintiff the difference between the overtime rates actually paid and the proper overtime rates.

58.     Because Defendant knew its pay practices violated the FLSA, or showed reckless disregard for whether their pay practices violated the FLSA, Defendant owes these wages for the entirety of Plaintiff's employment.



59.    Defendant is liable to Plaintiff for an amount equal to all unpaid and/or underpaid overtime wages.

60.    Defendant is, further, liable to Plaintiff for liquidated damages in an additional amount equal to all unpaid and/or underpaid overtime wages.

61.    Plaintiff are entitled to recover all reasonable attorneys' fees and costs incurred in this action.


## VII.

### DAMAGES

62.    As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

a.    By and through his Original Petition, Jorge Avalos pleads that Defendant, and its agents, employees and representatives, have caused him grievous harm and damages. As a direct and proximate result of its violations of the FLSA, Federal law, Texas law, Defendant has caused Jorge Avalos to suffer extensive damages in amounts within the jurisdictional limits of this Court.

b.    By and through his Original Petition, Jorge Avalos pleads that Defendant has caused him to suffer acute mental anguish and severe emotional distress including, but not limited to, intense feelings of guilt and depression, anxiety, worry, apprehension, low self-esteem, severe humiliation, belittlement, shame, uncontrollable panic attacks, loss of sleep and appetite, and alienation of affection from his family and friends. Jorge Avalos will, in all likelihood and for the balance of his life, continue to suffer these damages.



c.    By and through his Original Petition, Jorge Avalos pleads that Defendant caused him to suffer lost back wages, lost future wages, and loss of other valuable employment benefits such as insurance and retirement benefits. Jorge Avalos will continue to suffer these wages and benefits into the foreseeable future.

d.    Jorge Avalos was forced to secure the undersigned counsel to protect his rights guaranteed by the Federal Law, Texas Labor Code and, therefore, requests an award of attorney's fees and taxable costs of Court.

63.    WHEREFORE, PREMISES CONSIDERED, Plaintiff Jorge Avalos respectfully prays that, upon final trial on the merits, he recover judgment against DEFENDANT, WOUNDED WARRIOR PROJECT, said judgment entitling Plaintiff to:

a.    Compensation for all reasonable damages, including, but not limited to, past and future wages and other compensation, in an amount to be determined upon inquest;

b.    Compensation for compensatory damages such as mental anguish and emotional pain and suffering, in an amount to be determined upon inquest;

c.    A mandatory injunction promoting Jorge Avalos to full employment, with all lost wages and pertinent employment benefits, retroactive to his termination date;

d.    Reasonable and necessary attorney's fees;

e.    All taxable costs of court expended in this lawsuit;



f.  Pre-judgment and post-judgment interest, at the maximum rate permitted by law;

g.  Such other and further legal relief, either at law or equity, to which Jorge Avalos may be justly entitled;

h.  Reasonable attorney's fees, costs and expenses of this action, including expert witness costs;

i.  Pre-judgment and post-judgment interest at the highest rates allowed by law;

j.  Plaintiff seeks damages in an amount that is within jurisdictional limits of court; and

k.  Such other and further relief, at law or in equity, as this Honorable Court may find proper.

## VIII.

### JURY DEMAND

64.  Plaintiff demand a trial by jury.

## IX.

### ATTORNEY FEES AND COSTS

65.  Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. § 2000e-5(k).

## X.

### PRAYER



66.    For these reasons, plaintiff asks for judgment against defendant for the following:

a.      affirmative action to hire, reinstate, or promote plaintiff;

b.      back pay.

c.      front pay;

d.      compensatory damages;

e.      prejudgment interest on lost wages and benefits and post judgment interest on all

sums, including attorney fees;.

f.      for reasonable attorney fees;

g.      Costs of suit;

h.      All other relief the Court deems appropriate.


Respectfully submitted,

Law Offices of:
**THE JAKOB LAW FIRM, P.C.**
TETCO - PNC BANK TOWER
1100 NE Loop 410, Suite 200
San Antonio, Texas 78209
Tel.: (210) 226-4500
Fax: (210) 226-4502
Email: jjakob@thejakoblaw.com


By: _____
JASON J. JAKOB
State Bar No.: 24042933
Attorney for Plaintiff, Jorge Avalos

# EXHIBIT  NO. 1



**The Jakob Law Firm, P.C.**
1100 NE Loop 410, Suite 200
San Antonio, Texas 78209
Telephone: (210) 226-4500
Telecopier: (210) 226-4502


JASON J. JAKOB, ESQ.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229
(210) 640-7530
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/21/2022

**To:** Jorge Avalos
311 CR 2753
Mico, TX 78056

Charge No: 451-2022-03191

EEOC Representative and email:    Carla Torres-Solis
Federal Investigator
carla.torres-solis@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice**. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 451-2022-03191.

On behalf of the Commission,

Norma J. Guzman
Field Director

cc:
Wounded Warrior Project
12672 Silicon Dr., Suite 105
San Antonio, TX 78249

Thickler@woundedwarriorproject.org

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

# EXHIBIT NO. 2



**The Jakob Law Firm, P.C.**
1100 NE Loop 410, Suite 200
San Antonio, Texas 78209
Telephone: (210) 226-4500
Telecopier: (210) 226-4502

JASON J. JAKOB, ESQ.

EEOC Form 5 (11/09)

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☑ EEOC | **451-2022-03191** |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Jorge Avalos | (706) 570-2799 | 12/06/1974 |

| Street Address | City, State and ZIP Code |
|---|---|
| 311 CR 2753 | Mico, Texas 78056 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Wounded Warrior Project | 50,000 | (210) 569-0300 |

| Street Address | City, State and ZIP Code |
|---|---|
| 12672 Silicon Dr., Suite 105 | San Antonio, Texas |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☑ NATIONAL ORIGIN

☑ RETALIATION  ☑ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: April 2019    Latest: May 02, 2022

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see attached Affidavit referenced as complaint Exhibit A.

I believe that I have been discriminated against because of my national origin (Mexican), and sex (male), in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I have been discriminated against based on my age (47), in violation of the Age Discrimination in Employment Act of 1967, as amended. I believe I have been retaliated against in violation of the aforementioned statutes.

Initial _____ Date 08Sep22

JANA LITTLE
Notary Public, State of Texas
Comm. Expires 06-13-2028
Notary ID 133815200

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10APR22 _____<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>08-10-2022 |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT NO. 3



**The Jakob Law Firm, P.C.**
1100 NE Loop 410, Suite 200
San Antonio, Texas 78209
Telephone: (210) 226-4500
Telecopier: (210) 226-4502

JASON J. JAKOB, ESQ.

THE STATE OF TEXAS                    §
COUNTY OF BEXAR                       §
                                     §

## SWORN AFFIDAVIT OF JORGE AVALOS

Before me the undersigned notary, on this day personally appeared **JORGE AVALOS**, a person whose identity is known to me. After I administered an oath to him, upon his oath he said:

1)      "My name is **JORGE AVALOS.** I am the Charging Party in this case. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are written within my personal knowledge and are true and correct;

2)      I was employed by Wounded Warrior Project in which my employment contract was terminated as the Soldier Ride Team Technician because of a false claim of sexual harassment by Krissy Lopez, a co-worker from Wounded Warrior Project. These are the following email responses between Krissy Lopez and me which resulted in the loss of my contract;

3)      The following is list of email content beginning April 16-20 of 2019 through November 3 of 2021;

a)  **April 16-20, 2019**

   **Jorge,**

   This email is meant to inform you and our leadership that your sexual harassment (physical, verbal, non-verbal) towards me over the last 2.5 years has been extremely difficult and needs to cease now. The below sequence of events over the last couple years must be known and stopped so no other female (WWP teammate or warrior) feels attacked and/or left vulnerable by your inappropriate actions.

   Soldier Ride Washington DC: This event was our first-time meeting, you as a warrior and me as a WWP teammate. During the event, you asked me out for coffee (after work hours) though I declined.

   Response:
   Yes, this is indeed where we first met, and we talked about my cycling experience. I told you how I was a mechanic and I used to coach new cyclists. After this meeting, you've mentioned to me time and time over how you're the one that told Jonas about me and my experience and how I would be a good candidate as the back-up mechanic to Lorinda Puter. Fact of the matter is, Jonas and I had talked that week

Sworn Affidavit
Jorge Avalos
                              Page 1 of 7                          initials

about three times for at least an hour each time and exchanged information so that I could possibly work with the WWP (Wounded Warrior Project). This happened before you and I spoke.

I never invited you to coffee with me.

b) December 10-13, 2020 or January 14-17, 2021
Soldier Ride at T-Bar: As a teammate, you did not attend one of the Soldier Ride dinners, so you asked me to bring you back food. As a good teammate, I gave you a phone call 30 minutes out to let you know I would swing by your room to drop off the food. Surprising, you answered the door in your underwear and shirt. When you realized I was uncomfortable, you laughed and said "Oops." I immediately left your door after handing your food over. I shared this with Mike and Michelle for awareness and engagement on the matter.

Response:
I don't recall which of these two times that we went to the T-Bar Ranch you're referring to me not going to dinner with the team or the warriors. However, when you brought me the meal, I answered the door wearing running shorts and a t-shirt. The running shorts I always took with me on events look like cycling shorts but without the pad. I've never answered the door to anyone wearing just underwear. After I read this email, I contacted Michelle Sanchez and asked her if she was ever told about this, and her immediate response was no. she has also said that she would make a statement about this if necessary. Also, why didn't Mike Owens approach me about this behavior at that time?

c) September 23-28 or January 22-26, 2020

Soldier Ride El Paso: Sitting very near me on the bus, you asked me if I was happy in my marriage and then preceded to ask me how I knew I was happy with my husband, as if that wasn't enough, I asked all teammates for their room numbers to add to my attendance list, you texted me later and asked if that is all I needed it for. I shared this with Mike and Michelle again because it was getting unbearable with your nonverbal and verbal gestures/comments.

Response:
I don't know which of these two dates you're referring to, however when I asked you about your marriage, I asked in the same fashion I've asked many people that have been married for a long time in what makes people happy in their marriage and how they've made it last so long. I've asked the same question to Mike Owens (Soldier Ride Team Manager) when I found out how long he was married, to include asking him what made it work.

d) May 26-29, 2021, or February 16-20, 2021

Soldier Ride Killeen: You thought it might be a good idea or funny to grab me from behind with your hands on my hips and say, "You're all I need." I immediately told you sternly to

initials

keep your hands off me. I didn't share this with anyone as I was sick and in awe of your actions. I didn't tell my teammates, boss, or my husband.

Response:

I know for a fact I've never put my hands on you the way you described in this paragraph.

e) June 11, 2021

Soldier Ride San Antonio: During the Sea World event, I asked if anyone wanted water and you stated, "all I need is a tall glass of Krissy." I shared this with Mike and Jared due to your comments and physical touching was very difficult, though I wanted to keep the peace, but wanted you to cease bothering me.

Response:

I never said those words to you. If you did happen to tell Jared Holder (Teammate) or Mike Ownes, why didn't either of them, especially the team manager, talk to me about my actions or about your discomfort with my words?

Soldier Ride San Antonio: You continued and persisted to inquire about my happiness in my marriage, trying to engage in meaningful and personal conversation. Repeatedly, I've told you the same thing, I'm not interested, and I'm happily married. I kept this to myself but did share with my husband on some of your actions and words. I asked Joe to allow my leadership to handle it.

Response:

I've never had a conversation with you where you've had to use the words "I'm not interested" and "I'm happily married." If I did in fact, ask you about your happiness in your marriage in the many conversations we've had, it's most likely because you're always talking about your husband and your family and me trying to figure out the key to having a lasting marriage.

f) March 29-April 3, 2022

Soldier Ride Houston: You made comments about me not being outside working and then felt the need to come in later and apologize. In addition, when apologizing, you placed your hand on my leg and sat very close to me. I told you not to touch me and explained your lack of respect, lack of spacing with me, ;and that we were teammates, nothing else. The next day, you came up to me and hugged me in front of others and I firmly told you (again) to not touch me. I made it very clear to not touch me when I pulled away from your hug and told you I didn't need your apologies at Space Center Houston. Though your actions could be seen by outsiders as meaningless, when you put all the events (and this is not all of them) together, it is evident, your behavior is unprofessional and damaging.
I shared your actions with Mike, Jared, and Juan. Mike finally sent an email to all of us about professional behavior. In addition, Odyssey's new teammate, Holly, reached out to

 initials

me and asked, "What was is about Jorge always sending pics or videos of himself", so I told her to stay away from you.

Response:

    The comment I made to you was, "Welcome to the outside!" because you came out and tried to give advice on securing a tent due to the high winds we were experiencing. The tent was already secured, and I thought it would be funny to make that joke. You got embarrassed because everyone laughed, to include the new teammate Audra Adai, whom you were trying hard to impress. I realized that the joke bothered you after you told me, "Shut up Jorge" and you walked away. Later, when I walked into the hotel where your table was posted, I did sit in the seat next to you (where Juan Arrendondo had been sitting) and butted my shoulder up against yours and said, "I'm sorry." You told me there was nothing to be sorry about and proceeded to tell me why it bothered you so much on what I said. You told me you hated when Lorinda and Michelle would talk badly about you because you never came outside to help when everyone else on the team would be outside either unloading or loading all the bicycles on the trailer. This was also the part where you said Michelle was a bitch to you.

    The next day I did come up to you when you got off the bus and gave you a side hug and asked, "Are we good?" Then that is when you made a huge spectacle and yelled, "Get away from me Jorge!" So, I left you alone.

    I rode in a privately owned vehicle to Houston with Juan and rode back with him on Sunday morning. Saturday after dinner, you had asked Juan if you could ride back with him and tried to convince me to go back to San Antonio that night so all three of us could go back together. I told Juan that he could take you if he wanted and I would catch an Uber back, if necessary. Juan decided to not leave on Saturday night and instead, we left early Sunday morning.

    The email that was sent out from Mike did state quite a bit. After that email, I reached out to Mike and asked him if there was anything that I needed to address or did wrong? His reply was that it was to just remind all of us about proper behavior with each as teammates and around warriors. Not once did he say to me that I was the reason he had to send out that email.

    As for Holly Greenston, after reading that email, I sent her a text saying; "Hello Holly, I hope you're doing well. Just wanted to let you know that I apologize if I've offended you or made you feel uncomfortable in any way." She replied with, "OMeeGosh, not at all. You have done nothing wrong. I'm just balls to the walls busy trying to stay on my game. So sorry I've been a ghost. How are you?"

g) **April 26-May 1, 2022**

 initials

Soldier Ride Louisville: Knowing my discomfort, I asked another teammate to switch seats with me on the flight once I noticed we were sitting together. While on the flight, I drifted asleep and found out from you that you placed your head on my shoulder to sleep as well. In addition, during significant turbulence, I woke up suddenly and expressed my concerns of the turbulence and decided to put your hand on my leg and then grab my hand. I pulled away immediately. Lastly, to cover your tracks, you told a fellow teammate that I grabbed your hand, that is a lie. This entire experience has been traumatizing.

Response:

Yes, it turned out that we sat together on the flight from Dallas to Kentucky. The flight went smoothly until about 10 minutes till landing. There was some turbulence and you got really freaked out. I asked if you were okay, and you told me about a flight that you recently went on where the plane had dropped, and it scared you a lot. I saw how freaked out you were, so I grabbed your hand to calm you down. We interlaced fingers and held hands for at least five minutes. No, you didn't immediately pull away as you stated. Not once was that intended to be a romantic or sexual gesture at any time. You even squeezed my hand tightly when the turbulence got stronger. I was there as a friend being there for another friend in a time of fear. Once the event was over, we let go of our hands. As for the head on your shoulder comment, I made that comment, I made that comment in front of others as a joke on how you were fast asleep. I never did put my head on your shoulder because I didn't fall asleep at all on the plane.

I also want to mention, that before the flight took off from Dallas, I was watching a show on my phone called "Peaky Blinders". It started on Season 3 episode 5 where the main character goes to a Russian mansion. Because I have seen the show before, I knew what scene was about to come up, so I fast forward the sex scenes because that's not an episode to watch where others can see it. Krissy glanced over to my phone and saw that I was watching that show and told me how she was watching it as well. In casual conversation, after I had mentioned to the rest of the team how I had to fast forward a lot of the show. Krissy stated, "Why would you forward it?" I said, "Because it had explicit sex scenes", she then stated, "What? I like sex!" I didn't say anything after that.

After being in Kentucky for a few days, we finally had the chance to meet Audra's fiancée, Kyle. The first thing Krissy said to Kyle was, "Oh my God, you must be Kyle!" Lift up your shirt and let me see those abs!" I immediately looked at Jared and raised my eyebrows. I then turned to Kyle and saw his uncomfortable look and he replied with, "I don't really have any."

Thursday April 28, 2022: The warriors showed up in the morning and we all did what we normally do when they show up the first day. However, at 8:07pm you called me asking I could escort you because a male warrior asked if he could exchange some clothing, and you didn't wan to be in the conference room alone with him. I agreed to help you out and I saw nothing wrong with you asking me this because it's not the first time you've asked me to assist you with things. If I was such a threat to you and if you were so uncomfortable being around me. Why did you call

me to escort you and not any of the other three teammates? Especially since there was now a female on the team?

   After we helped the warrior exchange his clothes, we ran into three warriors that attended the Nashville ride last year that were headed to the Mexican restaurant at the base level of the hotel. You asked me to come along with you to talk with them in the restaurant. I agreed to go and we all stood and talked there for at least 15 minutes. Then you and I left, walked upstairs, went into the elevators said goodnight and for off on our respective floors.

   When we were at the airport Sunday morning (April 1, 2022), I noticed you were being very distant, I didn't say anything to you until the team (Mike, Jered, You, and Me) stopped to get coffee at the shop in the airport. When your coffee came out, I picked it up and brought it to you while you were sitting outside the shop. I squatted down, asked you if you were okay and asked you if you and I could sit and talk sometime so that we could squash whatever tension there was between us because I didn't want that tension to make working together difficult for the rest of the events. You nodded and said OKAY. Then, we went to the terminal, and you got on the plane that left a couple of hours before mine. That's the last I heard from you until I received this email.

   Your actions this past week during Soldier Ride in Louisville, KY left me feeling angry, disgusted, and fearful. It is obvious, there have been many moments where you could adjust yourself, but instead you defy my repeated attempts to keep you away. This pattern of behavior is unwarranted. Not only do you make sexual gestures towards me the last few years, but you also continually flirt and give an unprofessional image of Wounded Warriors Project towards females on the events. It's as if you think the events are a dating opportunity for you. Perhaps, you've somehow mistaken my fun, bubbly personality for something more but rest assured, I am and always have been happily married and love my husband of 25 years.

Response:
   To address the comments on the "dating opportunities", not once have I asked a female warrior on a date nor have I been disrespectful to them in making them think that I wanted to be involved with any of them.

   Your random texts thinking of me or trying to connect in some way (during my leave, on the weekends) makes me uncomfortable and I don't believe it is proper. Beyond that, you continuously make snide comments about me being a "Colonel's wife" or "it must be nice with all that money" so please, again, do NOT do this to me or other women in the future. It makes all of us extremely uncomfortable.
-Krissy

Response:
   The so-called random texts that I've sent you have been of things that involve chickens or asking if you're okay on the times that you weren't with us on the events. I figured that was okay because I thought we indeed were friends. You offered to connect with me on Facebook, but then chose not to, because you asked if

I was friends with Mike, Jared, and Juan and I said yes. You stated you didn't want any of them to know your personal Facebook account.

You also gave me eggs from your chickens on the 11th or 12th of February and included a card that reads "You're just like fried chicken. You make everything better". I sent you a thank you message for the card and the eggs, and your response was "You are so Welcome! Thanks for being a great teammate and friend!" To which I replied, "I really enjoy it and appreciate your friendship very much."

You have mentioned to me, on more than two occasions, that I should come by your house to see your chicken coup. You've shown me several pictures of the chicken coup and told me I need to come by and see if for myself. Thank goodness I've never taken you up on that offer.

4)  November 3, 2021 You and I taught a bicycle handlebar wrapping class in the Wounded Warriors Project office gym. This was preplanned for at least two months. You and I were alone with Mike stopping in a couple of times. However, I just find it odd that you claim to be extremely uncomfortable with me when you've asked me to help you many times.

5)  [ In support of this Affidavit are the following enclosures hereto verbatim which are included in this Affidavit. ]

"Further affiant sayeth naught."

Jorge Avalos

Sworn to and subscribed before me by **Jorge Avalos** on this _15th_ day of July 2022.

**STATE OF TEXAS**     §
**BEXAR COUNTY**     §

(locus sigilli)

Notary Public in and for
The State of Texas

My commission expires: _2026_

Sworn Affidavit
Jorge Avalos

Page **7** of **7**

initials